ORIGINAL

FILED

2017 JUL 19 AM 11:18

1   SANDRA R. BROWN
    Acting United States Attorney
2   LAWRENCE S. MIDDLETON
    Assistant United States Attorney
3   Chief, Criminal Division
    ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4   Assistant United States Attorney
    OCDETF Section
5       1400 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-1259
7       Facsimile: (213) 894-0142
        E-mail:   alexander.schwab@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,        No. CR 15-562-PSG

13          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                     ADNAN FAYEZ BAHHUR (#1)
14          v.

15   ADNAN FAYEZ BAHHUR, et al.,

16          Defendants.

17

18        1.   This constitutes the plea agreement between defendant Adnan

19   Fayez Bahhur ("defendant") and the United States Attorney's Office

20   for the Central District of California (the "USAO") in the above-

21   captioned case.  This agreement is limited to the USAO and cannot

22   bind any other federal, state, local, or foreign prosecuting,

23   enforcement, administrative, or regulatory authority.

24        2.   Defendant understands and agrees that this Agreement is

25   part of a "package deal" in which the disposition of the case against

26   defendant is tied to and conditioned on the disposition of cases

27   against three other defendants, namely, HAKEEM ADNAN BAHHUR ("H.

28   BAHHUR"), ISLAM ADNAN BAHHUR ("I. BAHHUR"), and MAESA ADNAN BAHHUR

1   ("M. BAHHUR").  Accordingly, defendant and the USAO agree that this

2   Agreement and the obligations it creates will not become binding on

3   the USAO and defendant unless and until: (a) defendant executes this

4   Agreement and enters a guilty plea in accordance with this Agreement;

5   (b) defendants H. BAHHUR and M. BAHHUR execute their plea agreements

6   with the USAO and enter guilty pleas in accordance with those

7   agreements; and (c) defendant I. BAHHUR executes his letter agreement

8   with the USAO.  Defendant acknowledges that defendant has discussed

9   with defendant's attorney, and carefully considered, the possible

10  advantages and disadvantages to defendant of entering into this

11  Agreement as part of the package deal; defendant is entering into

12  this Agreement as part of the package deal freely and voluntarily

13  because defendant believes this Agreement and the package deal to be

14  in defendant's best interests; and defendant is not entering into

15  this Agreement as part of the package deal because of threats,

16  coercion, or other undue influence by the USAO or by the other

17  defendants who are part of the package deal, their counsel, or anyone

18  acting on their behalf.

19                           DEFENDANT'S OBLIGATIONS

20       3.   Defendant agrees to:

21            a.   Give up the right to indictment by a grand jury and,

22  at the earliest opportunity requested by the USAO and provided by the

23  Court, appear and plead guilty to a single-count information in the

24  form attached to this agreement as Exhibit A or a substantially

25  similar form, which charges defendant with conspiracy to manufacture,

26  possess with intent to distribute, and distribute controlled

27  substance analogues, in violation of 18 U.S.C. § 371.

28            b.   Not contest facts agreed to in this agreement.

2

1         c.   Abide by all agreements regarding sentencing contained
2  in this agreement.

3         d.   Appear for all court appearances, surrender as ordered
4  for service of sentence, obey all conditions of any bond, and obey
5  any other ongoing court order in this matter.

6         e.   Not commit any crime; however, offenses that would be
7  excluded for sentencing purposes under United States Sentencing
8  Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not
9  within the scope of this agreement.

10        f.   Be truthful at all times with Pretrial Services, the
11  United States Probation Office, and the Court.

12        g.   Pay the applicable special assessment at or before the
13  time of sentencing unless defendant lacks the ability to pay and
14  prior to sentencing submits a completed financial statement on a form
15  to be provided by the USAO.

16                FORFEITURE AND FINANCIAL ACCOUNTABILITY

17   4.   Defendant further agrees:

18         a.   Truthfully to disclose to law enforcement officials,
19  at a date and time to be set by the USAO, the location of,
20  defendant's ownership interest in, and all other information known to
21  defendant about, all monies, properties, and/or assets of any kind,
22  derived from or acquired as a result of, or used to facilitate the
23  commission of, defendant's illegal activities, and to forfeit all
24  right, title, and interest in and to such items, which defendant
25  admits constitute the proceeds of defendant's illegal activity in
26  violation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

27         b.   To the Court's entry of an order of forfeiture at or
28  before sentencing with respect to these assets and to the forfeiture

1    of the assets.

2             c.   To take whatever steps are necessary to pass to the

3    United States clear title to the assets described above, including,

4    without limitation, the execution of a consent decree of forfeiture

5    and the completing of any other legal documents required for the

6    transfer of title to the United States.

7             d.   Not to contest any administrative forfeiture

8    proceedings or civil judicial proceedings commenced against these

9    properties pursuant 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

10   With respect to any criminal forfeiture ordered as a result of this

11   plea agreement, defendant  waives the requirements of Federal Rules

12   of Criminal Procedure 32.2 and 43(a) regarding notice of the

13   forfeiture in the charging instrument, announcements of the

14   forfeiture sentencing, and incorporation of the forfeiture in the

15   judgment.  Defendant acknowledges that forfeiture of the assets is

16   part of the sentence that may be imposed in this case and waives any

17   failure by the Court to advise defendant of this, pursuant to Federal

18   Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts

19   defendant's guilty plea.

20            e.   Not to assist any other individual in any effort

21   falsely to contest the forfeiture of the assets described above.

22            f.   Not to claim that reasonable cause to seize the assets

23   was lacking.

24            g.   To prevent the transfer, sale, destruction, or loss of

25   any and all assets described above to the extent defendant has the

26   ability to do so.

27            h.   To fill out and deliver to the USAO a completed

28   financial statement listing defendant's assets on a form provided by

1  the USAO.

2        i.    That forfeiture of assets described above shall not be

3  counted toward satisfaction of any special assessment, fine,

4  restitution, costs, or other penalty the Court may impose.

5  THE USAO'S OBLIGATIONS

6     5.   The USAO agrees to:

7        a.    Not contest facts agreed to in this agreement.

8        b.    Abide by all agreements regarding sentencing contained

9  in this agreement.

10        c.    At the time of sentencing, move to dismiss the

11  underlying indictment as against defendant.  Defendant agrees,

12  however, that at the time of sentencing the Court may consider any

13  dismissed charges in determining the applicable Sentencing Guidelines

14  range, the propriety and extent of any departure from that range, and

15  the sentence to be imposed.

16        d.    At the time of sentencing, provided that defendant

17  demonstrates an acceptance of responsibility for the offense up to

18  and including the time of sentencing, recommend a two-level reduction

19  in the applicable Sentencing Guidelines offense level, pursuant to

20  USSG § 3E1.1, and recommend and, if necessary, move for an additional

21  one-level reduction if available under that section.

22  NATURE OF THE OFFENSE

23     6.   Defendant understands that for defendant to be guilty of

24  the crime charged in the sole count of the information, that is,

25  conspiracy to manufacture, possess with intent to distribute, and

26  distribute controlled substance analogues, in violation of 18 U.S.C.

27  § 371, the following must be true: (1) there was an agreement between

28  two or more persons to manufacture, possess with intent to

5

distribute, and distribute controlled substance analogues, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 813; (2) defendant

joined in the agreement knowing of its purpose and intending to help

accomplish that purpose; (3) defendant knew that the XLR-11 was

intended for human consumption; (4) XLR-11 has a stimulant,

depressant, or hallucinogenic effect on the central nervous system

that is substantially similar to or greater than the stimulant,

depressant, or hallucinogenic effect on the central nervous system of

a Schedule I or Schedule II controlled substance or is represented or

intended to have  a stimulant, depressant, or hallucinogenic effect

on the central nervous system that is substantially similar to or

greater than the stimulant, depressant or hallucinogenic effect on

the central nervous system of a Schedule I or Schedule II controlled

substance; (5) defendant knew either that XLR-11 was controlled

either as a scheduled substance or as a controlled substance

analogue, or that it had a substantially similar chemical structure

to a Schedule I or Schedule II controlled substance; and (6) one of

the members of the conspiracy performed at least one overt act for

the purpose of carrying out the conspiracy.

PENALTIES

7.    Defendant understands that the statutory maximum sentence

that the Court can impose for a violation of 18 U.S.C. § 371, is:

five years' imprisonment; a three-year period of supervised release;

a fine of $250,000 or twice the gross gain or gross loss resulting

from the offense, whichever is greatest; and a mandatory special

assessment of $100.

8.    Defendant understands that supervised release is a period

of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

9.   The Court will also order forfeiture of the property listed in the forfeiture allegation of the indictment, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, or substitute assets up to the value of that property.

10.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant

1 | fully regarding the immigration consequences of the felony conviction
2 | in this case.  Defendant understands that unexpected immigration
3 | consequences will not serve as grounds to withdraw defendant's guilty
4 | plea.

FACTUAL BASIS

6 |     12.  Defendant admits that defendant is, in fact, guilty of the
7 | offense to which defendant is agreeing to plead guilty.  Defendant
8 | and the USAO agree to the statement of facts provided below and agree
9 | that this statement of facts is sufficient to support a plea of
10 | guilty to the charge described in this agreement but is not meant to
11 | be a complete recitation of all facts relevant to the underlying
12 | criminal conduct or all facts known to either party that relate to
13 | that conduct.

14 |     Since March 1, 2011, JWH-018, a synthetic cannabinoid, has been
15 | classified as a Schedule I controlled substance.  XLR-11 is a
16 | synthetic cannabinoid that is among the analogues of JWH-018.  As an
17 | analogue of JWH-018, XLR-11 has a substantially similar chemical
18 | structure and a stimulant, depressant, or hallucinogenic effect on
19 | the central nervous system that is substantially similar to that of
20 | JWH-018, which itself mimics the effects of tetrahydrocannabinol
21 | (THC).  XLR-11 can be mixed with other agents, such as acetone, to
22 | generate a mixture sprayed onto plant material to create a smokable
23 | synthetic cannabinoid ("SSC"), often referred to as "spice."

24 |     Beginning on a date unknown and continuing to approximately May
25 | 30, 2013, in Los Angeles, Orange, and Riverside Counties, within the
26 | Central District of California, and elsewhere, defendant conspired
27 | and agreed with others to knowingly and intentionally manufacture,
28 | possess with intent to distribute, and distribute SSCs containing a

detectable amount of XLR-11, knowing that the substances were intended for human consumption and knowing that XLR-11 was a controlled substance analogue.  And, during the course of the conspiracy, members performed overt acts for the purpose of carrying out the conspiracy.  Specifically, defendant ran a business in which he would purchase, or cause others, including his daughter, M. BAHHUR, to purchase, XLR-11 in its chemical form.  The XLR-11 would then be shipped from suppliers in China, often under false labels, to recipients designated by defendant.  Defendant would oversee the manufacture and sale of SSCs treated with the XLR-11 he purchased at his business, "Glass 'R' Us," located in Fullerton, California.  He also directed his sons, H. BAHHUR and I. BAHHUR, to manufacture, transport, and sell these SSCs and deposit the proceeds of SSC sales into bank accounts over which defendant exercised control.

For example, defendant instructed I. BAHHUR on August 29, 2011, to package SSCs for sale, and, on July 4, 2012, I. BAHHUR deposited roughly $2,700 in SSC proceeds into a bank account controlled by defendant.  Additionally, on January 10, 2013, defendant and a co-conspirator manufactured SSCs at a warehouse leased by codefendant Yasir Harb.

Over the course of the conspiracy, defendant ordered or intended receipt of several shipments of XLR-11 in its chemical form that were ultimately intercepted by law enforcement.  For example, on or about September 14, 2012, defendant received approximately 20 kilograms of XLR-11 during a controlled delivery by law enforcement at his Glass "R" Us business in Fullerton.  On or about December 18, 2012, law enforcement intercepted approximately 3 kilograms of XLR-11 that had been ordered by defendant and that had been mislabeled "sodium

1   alginate."  And, on or about January 22, 2013, law enforcement

2   intercepted an additional nine kilograms of XLR-11 from five separate

3   packages that had been ordered by defendant, which were mislabeled

4   "zeolite" or "BNX565."  These interdicted shipments collectively

5   contained approximately 32 kilograms of actual XLR-11 in its chemical

6   form -- a quantity that defendant had either actual knowledge of or

7   was reasonably foreseeable to him -- that defendant either intended

8   to use personally in the manufacture of SSCs or intended to have

9   shipped to other individuals for use in manufacturing SSCs.

SENTENCING FACTORS

11       13.  Defendant understands that in determining defendant's

12   sentence the Court is required to calculate the applicable Sentencing

13   Guidelines range and to consider that range, possible departures

14   under the Sentencing Guidelines, and the other sentencing factors set

15   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

16   Sentencing Guidelines are advisory only, that defendant cannot have

17   any expectation of receiving a sentence within the calculated

18   Sentencing Guidelines range, and that after considering the

19   Sentencing Guidelines and the other § 3553(a) factors, the Court will

20   be free to exercise its discretion to impose any sentence it finds

21   appropriate between the mandatory minimum and up to the maximum set

22   by statute for the crime of conviction.

23       14.  Except as set forth in paragraph 4 above, defendant and the

24   USAO have no agreement as to the appropriate sentence or the

25   applicable Sentencing Guidelines factors.  Except as set forth in

26   paragraph 4, both parties reserve the right to seek any sentence

27   within the statutory maximum, and to argue for any criminal history

28   score and category, base offense level, specific offense

10

1   characteristics, adjustments, departures, and variances.

2       15.   Defendant understands that there is no agreement as to

3   defendant's criminal history or criminal history category.

4       16.   Defendant and the USAO reserve the right to argue for a

5   sentence outside the sentencing range established by the Sentencing

6   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

7   (a)(2), (a)(3), (a)(6), and (a)(7).

8                    WAIVER OF CONSTITUTIONAL RIGHTS

9       17.   Defendant understands that by pleading guilty, defendant

10  gives up the following rights:

11          a.   The right to persist in a plea of not guilty.

12          b.   The right to a speedy and public trial by jury.

13          c.   The right to be represented by counsel -- and if

14  necessary have the court appoint counsel -- at trial.   Defendant

15  understands, however, that, defendant retains the right to be

16  represented by counsel -- and if necessary have the court appoint

17  counsel -- at every other stage of the proceeding.

18          d.   The right to be presumed innocent and to have the

19  burden of proof placed on the government to prove defendant guilty

20  beyond a reasonable doubt.

21          e.   The right to confront and cross-examine witnesses

22  against defendant.

23          f.   The right to testify and to present evidence in

24  opposition to the charges, including the right to compel the

25  attendance of witnesses to testify.

26          g.   The right not to be compelled to testify, and, if

27  defendant chose not to testify or present evidence, to have that

28  choice not be used against defendant.

                            11

1          h.    Any and all rights to pursue any affirmative defenses,
2     Fourth Amendment or Fifth Amendment claims, and other pretrial
3     motions that have been filed or could be filed.

4                    WAIVER OF APPEAL OF CONVICTION

5          18.  Defendant understands that, with the exception of an appeal
6     based on a claim that defendant's guilty plea was involuntary, by
7     pleading guilty defendant is waiving and giving up any right to
8     appeal defendant's conviction on the offense to which defendant is
9     pleading guilty.

10               LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

11         19.  Defendant agrees that, provided the Court imposes a total
12    term of imprisonment on the count of conviction at or below the
13    statutory maximum specified above, defendant gives up the right to
14    appeal all of the following: (a) the procedures and calculations used
15    to determine and impose any portion of the sentence; (b) the term of
16    imprisonment imposed by the Court; (c) the fine imposed by the court,
17    provided it is within the statutory maximum; (d) the term of
18    probation or supervised release imposed by the Court, provided it is
19    within the statutory maximum; and (e) any of the following conditions
20    of probation or supervised release imposed by the Court: the
21    conditions set forth in General Orders 318, 01-05, and/or 05-02 of
22    this Court; the drug testing conditions mandated by 18 U.S.C.
23    §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
24    authorized by 18 U.S.C. § 3563(b)(7).

25         20.  The USAO agrees that, provided all portions of the sentence
26    are at or below the statutory maximum specified above, the USAO gives
27    up its right to appeal any portion of the sentence.

28

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

24.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

14

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

26. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, and (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant

1  understands that no one -- not the prosecutor, defendant's attorney,

2  or the Court -- can make a binding prediction or promise regarding

3  the sentence defendant will receive, except that it will be within

4  the statutory maximum.

5  <u>NO ADDITIONAL AGREEMENTS</u>

6     29.  Defendant understands that, except as set forth herein,

7  there are no promises, understandings, or agreements between the USAO

8  and defendant or defendant's attorney, and that no additional

9  promise, understanding, or agreement may be entered into unless in a

10  writing signed by all parties or on the record in court.

11  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

12     30.  The parties agree that this agreement will be considered

13  part of the record of defendant's guilty plea hearing as if the

14  entire agreement had been read into the record of the proceeding.

15  AGREED AND ACCEPTED

16  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF

17  CALIFORNIA

18  SANDRA R. BROWN
   Acting United States Attorney

19

20  _____          July 12, 2017
                                             _____
21  ALEXANDER B. SCHWAB                       Date
   Assistant United States Attorney

22
                                             June - 30 - 2017
23  _____          _____
   ADNAN FAYEZ BAHHUR                        Date
24  Defendant
                                             June 30, 2017
25  _____          _____
   JOHN H. HOBSON                            Date
26  Attorney for Defendant
   ADNAN FAYEZ BAHHUR

27

28

                        16

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____       July-11-2017
ADNAN FAYEZ BAHHUR                     Date
Defendant


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ADNAN FAYEZ BAHHUR's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

1  provisions, and of the consequences of entering into this agreement.

2  To my knowledge: no promises, inducements, or representations of any

3  kind have been made to my client other than those contained in this

4  agreement; no one has threatened or forced my client in any way to

5  enter into this agreement; my client's decision to enter into this

6  agreement is an informed and voluntary one; and the factual basis set

7  forth in this agreement is sufficient to support my client's entry of

8  a guilty plea pursuant to this agreement.

9  _____                    June 30, 2017
                                               _____
10 JOHN H. HOBSON                              Date
   Attorney for Defendant
11 ADNAN FAYEZ BAHHUR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          No. CR 15-562(A)-PSG

11            Plaintiff,                F I R S T
                                        S U P E R S E D I N G
12            v.                        I N F O R M A T I O N

13   ADNAN FAYEZ BAHHUR,                [18 U.S.C. § 371: Conspiracy to
        aka "Tom,"                      Manufacture, Possess with Intent
14      aka "Bob,"                      to Distribute, and Distribute
        aka "Abu Islam,"                Controlled Substance Analogues]
15      aka "Abo Islam,"
        aka "Tommy Gun,"
16      aka "Abu Hajrah,"

17            Defendant.

18

19        The Acting United States Attorney charges:

20                      [18 U.S.C. § 371]

21   A.   GENERAL ALLEGATIONS

22        1.   The Controlled Substance Analogue Enforcement Act of

23   1986 (the "Analogue Act") makes unlawful the manufacture,

24   dispensing, and possession of controlled substance analogues.  A

25   controlled substance analogue is a substance which is

26   substantially similar to the chemical structure of a Schedule I

27   or Schedule II controlled substance and which has either a

28   stimulant, depressant, or hallucinogenic effect on the central

nervous system that is substantially similar to or greater than
that of the chemically analogous Schedule I or Schedule II
controlled substance, or is represented or intended to have such
an effect.  A controlled substance analogue intended for human
consumption is treated as a Schedule I or Schedule II controlled
substance for purposes of the Controlled Substances Act.

 2. Since March 1, 2011, 1-pentyl-3-(1-naphthoyl)indole
("JWH-018") has been classified as a Schedule I controlled
substance which has a depressant and hallucinogenic effect on
the central nervous system.  JWH-018 is a synthetic cannabinoid.

 3. The synthetic cannabinoid 1-(5-fluoropentyl)-3-
(2,2,3,3-tetramethycyclopropoyl)indole, also known as ("aka")
"5F," aka "5-Flouro-144," aka "XLR-11" ("XLR-11"), is among the
analogues of JWH-018.  As an analogue of JWH-018, XLR-11 can be
mixed with agents, such as acetone, to generate a mixture that
is sprayed onto plant material, such as marshmallow leaf or
damania leaf, to create synthetic marijuana (commonly referred
to as "spice" or "herbal incense").  Such synthetic cannabinoids
are smoked or orally ingested, and are referred to as smokable
synthetic cannabinoids ("SSCs").

 4. On May 16, 2013, XLR-11 became a Schedule I Controlled
Substance.

B. OBJECTS OF THE CONSPIRACY

 Beginning on a date unknown, and continuing to
approximately on or about May 30, 2013, in Los Angeles, Orange,
and Riverside Counties, within the Central District of
California, and elsewhere, defendant ADNAN FAYEZ BAHHUR, also
known as ("aka") "Tom," aka "Bob," aka "Abu Islam," aka "Abo

1  Islam," aka "Tommy Gun," aka "Abu Hajrah" ("BAHHUR"), and others

2  known and unknown, conspired and agreed with each other to

3  knowingly and intentionally manufacture, possess with intent to

4  distribute, and distribute SSCs, knowing that the SSCs were

5  intended for human consumption, in violation of Title 21, United

6  States Code, Sections 813, 841(a)(1) and (b)(1)(C).

7  C.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

8       ACCOMPLISHED

9       The objects of the conspiracy were to be accomplished, in

10  substance, as follows:

11      1.   Defendant BAHHUR would purchase and cause co-

12  conspirators to purchase XLR-11 in chemical form for the purpose

13  of resale and usage in the manufacture of SSCs, would oversee

14  the manufacture and sale of SSC products, and would direct the

15  collection of proceeds from the sale of SSCs.

16      2.   Co-conspirators would assist defendant BAHHUR in

17  procuring XLR-11, in obtaining packaging for manufactured SSCs,

18  in distributing SSC products containing XLR-11, and in handling

19  proceeds of SSC sales.

20      3.   Co-conspirators would manufacture, transport, and sell

21  SSC products containing XLR-11 and would direct the deposit of

22  proceeds of SSC sales into bank accounts controlled by the

23  BAHHUR family, at the direction of defendant BAHHUR and others.

24  D.   OVERT ACTS

25      In furtherance of the conspiracy, and to accomplish the

26  objects of the conspiracy, on or about the following dates,

27  defendant BAHHUR, and others known and unknown, committed

28

various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On July 4, 2012, a co-conspirator ("Co-Conspirator A") deposited $2,700, cash proceeds from the sale of SSCs, into a bank account controlled by defendant BAHHUR.

2. On September 10, 2012, defendant BAHHUR ordered XLR-11 to be delivered to a post office box controlled by a co-conspirator ("Co-Conspirator B").

3. On September 14, 2012, Co-Conspirator B delivered a package of approximately 20 kilograms of XLR-11, packaged in bags marked "5F," to defendant BAHHUR and Co-Conspirator A at the business location for Glass "R" Us in Fullerton, California.

4. On September 14, 2012, defendant BAHHUR, Co-Conspirator A, and another co-conspirator ("Co-Conspirator D") possessed SSCs containing XLR-11, and paraphernalia for the manufacture of SSCs, at the Glass "R" Us business location in Fullerton, California.

5. On December 18, 2012, defendant BAHHUR caused an unindicted co-conspirator in China to send approximately three kilograms of SSCs containing XLR-11, mislabeled as "sodium alginate," to an unindicted co-conspirator in Fullerton, California.

6. On January 10, 2013, defendant BAHHUR and an unidentified co-conspirator manufactured SSCs at a warehouse leased by a co-conspirator ("Co-Conspirator E").

7. On January 11, 2013, defendant BAHHUR emailed an unindicted co-conspirator in China seeking to order SSC chemicals and SSC packaging paraphernalia.

4

8.   On January 11, 2013, the unindicted co-conspirator in China e-mailed defendant BAHHUR and confirmed that ten kilograms of XLR-11 would be sent to defendant BAHHUR, such that two kilograms would be sent to Co-Conspirator E, two shipments of two kilograms would be sent to an unindicted co-conspirator in Fullerton, California, two kilograms would be sent to Co-Conspirator D, and two kilograms would be sent to another unindicted co-conspirator.

9.   On January 22, 2013, defendant BAHHUR caused an unindicted co-conspirator in China to send approximately one kilogram of XLR-11 by International Express Mail to Co-Conspirator E at a business location Co-Conspirator E maintained in Perris, California.

10.   On January 22, 2013, defendant BAHHUR caused an unindicted co-conspirator in China to send approximately one kilogram of XLR-11 by International Express Mail to Co-Conspirator E at a business location Co-Conspirator E maintained in Perris, California.

11.   On January 22, 2013, defendant BAHHUR caused an unindicted co-conspirator in China to send approximately one kilogram of XLR-11, mislabeled as "zeolite," by International Express Mail to an unindicted co-conspirator in Fullerton, California.

12.   On January 22, 2013, defendant BAHHUR caused an unindicted co-conspirator in China to send approximately three kilograms of SSCs containing XLR-11, mislabeled as "zeolite," by International Express Mail to defendants BAHHUR and Co-

1    Conspirator D, at a post office box they maintained in

2    Fullerton, California.

3         13.   On May 13, 2013, Co-Conspirator D possessed $33,900 in

4    cash proceeds from sales of SSCs along with pay-owe sheets

5    reflecting sales of SSCs.

6

7                          SANDRA R. BROWN
                           Acting United States Attorney
8

9

10                         LAWRENCE S. MIDDLETON
                           Assistant United States Attorney
11                         Chief, Criminal Division

12                         KEVIN M. LALLY
                           Assistant United States Attorney
13                         Chief, Organized Crime Drug
                              Enforcement Task Force Section
14
                           BENJAMIN R. BARRON
15                         Assistant United States Attorney
                           Deputy Chief, Organized Crime
16                            Drug Enforcement Task Force Section

17                         ALEXANDER BAIER SCHWAB
                           Assistant United States Attorney
18                         Organized Crime Drug Enforcement
                              Task Force Section
19

20

21

22

23

24

25

26

27

28

                                   6